UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

CASE NO. _____

OSF GROUP, LLC, a Florida
limited liability company,

      Plaintiff,

vs.

TAJ WHOLESALE, LLC, a
Florida limited liability
company, and GAD ABECKASER,
an individual,

      Defendants.

_____

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, OSF Group, LLC ("OSF"), sues Defendants, Taj Wholesale, LLC ("Taj") and Gad Abeckaser ("Abeckaser") (Taj and Abeckaser are collectively referred to as the "Defendants"), and states:

## THE PARTIES, VENUE, JURISDICTION

1.     OSF seeks injunctive relief and other legal and equitable remedies relating to Defendants' breaches of agreement and other tortious conduct, and to foreclose OSF's perfected security interest in property that remains in Defendants' possession or control, and which is being converted and depleted.

2.     OSF is a Florida limited liability company with its main office located in Miami-Dade County, Florida.

3.     Taj is a Florida limited liability company with its main office located in Duval County, Florida.

4.      Abeckaser is an individual residing in Miami-Dade County, Florida.

5.      The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as OSF's complaint seeks remedies under federal law; and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6.      Venue is likewise proper in this Court because facts giving rise to the claims occurred in Duval County, Florida, the agreements at issue were created, performed and/or breached in Duval County, Florida; and the secured collateral that OSF seeks to preserve and recover is located in Duval County, Florida

## MATERIAL ALLEGATIONS

**A.      Taj's Wrongful Conduct:**

7.      OSF and Taj entered into a December 29, 2022, Exclusive Product Distribution Agreement (the "Taj Agreement"), pursuant to which OSF licensed Taj to market and distribute "FIRE" brand electronic disposable cigarettes (the "E-cigarettes").  A correct copy of the Taj Agreement is attached as **Exhibit A.**

8.      The Agreement required Taj to place an initial order of 500,000 E-cigarette units with OSF ("Initial Order").  Exhibit A, § 4.1.  Taj agreed to pay $5.00 per unit for the first 100,000 E-cigarette units, and $5.50 for each unit purchased thereafter. Exhibit A, § 4.2.

9.      Taj agreed further that for the first 1,500,000 E-cigarette units purchased from OSF, Taj would pay 50% of the purchase price upon delivery to Taj's facility in Jacksonville; and the remaining 50% of the purchase price would be paid within 14 days thereafter. Exhibit A, § 4.3.

10.     OSF delivered the Initial Order of 500,000 E-cigarette units to Taj in four separate shipments. Taj paid 50% of the purchase price for the first shipment, but did not thereafter pay the remaining 50% of the purchase price within 14 days, as required by the Taj Agreement. Documents memorializing the shipment of and invoicing for the 500,000 E-cigarette units to Taj

are collectively attached as **Exhibit B.**

11.     Taj failed to pay OSF for the other three E-cigarette shipments that comprised the Initial Order.

12.     Taj owes OSG $2,112,500 (Two Million One Hundred and Twelve Thousand Five Hundred Dollars and Zero Cents) for the Initial Order of E-cigarettes that OSF delivered under the Taj Agreement.

13.     The Taj Agreement further required Taj to meet a minimum monthly purchase threshold of E-cigarettes.  Exhibit A, § 10.2.  Taj failed to meet this minimum threshold.

14.     Because of Taj's breaches, OSF exercised its right to terminate the Taj Agreement for cause.  Exhibit A, § 10.1-2.  A correct copy of OSF's March 21, 2023, demand for payment and termination notice to Taj is attached as **Exhibit C.**

15.     Taj agreed further that upon termination of the Taj Agreement, its contractual rights and license to market and sell OSF's E-cigarette product likewise would terminate and automatically revert to OSF, without any further acts or deeds of the parties.

16.     The Taj Agreement also grants OSF a first priority security interest in E-cigarette units received by Taj but not paid for as agreed, as well as all proceeds derived by Taj therefrom, in order to secure payment and other obligations of Taj under the Taj Agreement. Exhibit A, § 4.5.

17.     The Taj Agreement likewise authorizes OSF to file and record any financing statements necessary to perfect OSF's security interest in such collateral, and grants OSF all rights, powers and remedies available to secured creditors under the Uniform Commercial Code.  Id.  The UCC-1 financing statement filed in connection with the Taj Agreement is attached as **Exhibit D.**

18.     All E-cigarette units that OSF shipped to Taj constitute OSF's collateral, and Taj is without any legal right to sell or otherwise transfer these product units, which Taj has failed to pay

for.

19.     OSF has demanded that Taj either pay the $2,112,500 balance owed on the E-cigarettes, or return all of the units delivered, to no avail.

20.     On information and belief, Taj remains in possession of a substantial portion of OSF's secured collateral (the E-cigarette units shipped to Taj).

21.     Taj improperly and without authorization has transferred some of OSF's secured collateral to a former OSF consultant, who is seeking to liquidate this collateral at prices well beneath the minimum $6.50 per unit retail price set forth in the Taj Agreement. Exhibit A, § 5.6.

22.     Taj's actions, including specifically its failure to protect and preserve OSF's collateral, and transferring or otherwise allowing OSF's collateral into the marketplace without authority or consent -- where it is being sold well under the minimum price set forth in the Taj Agreement -- stands to cause immediate and irreparable harm to OSF.

23.     Taj is also purporting to sell the E-cigarettes received from OSF beneath the $6.50 minimum threshold price set forth in the Taj Agreement.

24.     Even though it still owes OSF $2,112,500.00 for the Initial Order of E-cigarettes OSF delivered, and even though OSF terminated the Agreement on March 24, 2023, Taj refuses to provide OSF with an accounting of the 500,000 E-cigarette units that OSF shipped (i.e., OSF's secured collateral), as required.  Exhibit A, § 10.3.

**B.     Abeckaser's Wrongful Conduct:**

25.     On December 22, 2022, OSF and Abeckaser entered into the OSF Group LLC Marketing Agreement (the "Abeckaser Agreement"), under which OSF engaged Abeckaser as a consultant to identify prospective distributors for OSF products and facilitate introductions, in exchange for a fee. A correct copy of the Abeckaser Agreement is attached as **Exhibit E.**  Exhibit

E, § 1.

26.     The Abeckaser Agreement was subject to termination by OSF if Abeckaser committed any acts of fraud or misrepresentation, or otherwise breached any terms. Exhibit E, § 9.

27.     As a material inducement for OSF to enter into the Abeckaser Agreement, and to avoid conflicts of interest, Abeckaser represented and warranted and agreed that he was not would not be an employee, officer, director, shareholder, partner, member, manager, or agent of any of the business accounts he was tasked with introducing to OSF. Exhibit E, § 9.

28.     Abeckaser also agreed to indemnify and hold OSF harmless for any injury to OSF's business accounts caused by Abeckaser.  Exhibit E, § 6.1.

29.     Abeckaser facilitated the introduction of Taj to OFS as a prospective distributor of the E-cigarettes.  These communications culminated in the Taj Agreement.

30.     Even though Abeckaser was not an officer, director, owner, partner, member or employee of OFS, he insisted on also signing the Taj Agreement individually, and not as a representative of OFS, allegedly in order to protect his interest in payments under the Abeckaser Agreement.  By doing so, Abeckaser ratified the terms of the Taj Agreement.

31.     The relationship between Taj and Abeckaser is not arm's length.  Rather, Abeckaser is an agent of Taj, and Abeckaser and Taj had a prior relationship and have since worked in tandem to undermine the purpose and intent of the Taj and Abeckaser Agreements, and have conspired to cause damages to OSF.

32.     As set forth below, Abeckaser has caused harm to OSF's business accounts, relationships and customer goodwill through his intentional misrepresentations and other unlawful actions.

33.     Without OSF's authority or approval, Abeckaser misrepresented to business

accounts and/or customers of OSF's E-cigarettes that Abeckaser was an owner of OSF and was authorized distribute or otherwise sell this product.

34.    Without OSF's authority or approval, Abeckaser purported to invoice OSF customers for product they ordered and he improperly retained these funds.

35.    On March 24, 2023, OSF's California counsel properly notified Abeckaser that it was terminating the Abeckaser Agreement immediately pursuant to § 9.3, because of GA's fraud and misrepresentations. A correct copy of OSF's termination notice to Abeckaser is attached as **Exhibit F.**

36.    In response to the termination notice, Abeckaser directed his Florida counsel to send a letter to OSF's California counsel, threatening him with criminal prosecution and 5 years in prison for "attempting to practice law in Florida without a license," if OSF proceeded further. A copy of GA's counsel's letter is attached as **Exhibit G.**    However. As is clear from Exhibit F, OSF's California counsel merely sent Abeckaser's counsel a proper notice of termination of the Abeckaser Agreement, which included a detailed explanation of the reasons for the termination. GA's threat to criminally prosecute OSF's counsel was intended to intimidate OSF from exercising its rights and otherwise secure a perceived strategic advantage in this civil dispute.

37.    Without OSF's authority or approval, Abeckaser continues to misrepresent to business accounts and/or customers of OSF, that Abeckaser is an owner of OSF and/or is authorized distribute or otherwise sell the E-cigarettes.  Abeckaser's representations are knowingly false and are creating significant confusion in the marketplace for OSF's products.

38.    By falsely holding himself out as an authorized OSF representative, Abeckaser continues to solicit and accept orders of the E-cigarettes from third-party business accounts of OSF without thereafter delivering the product, thereby defrauding OSF's third-party business accounts.

39.     Abeckaser remains unauthorized to market, distribute or otherwise sell the E-cigarettes, as Abeckaser is not affiliated with OSF and does not have a license or any legal right to market, distribute or otherwise sell product.

40.     Abeckaser has obtained and is directly selling some of the E-cigarette units from the initial shipment of 500,000 product units OFS shipped to Taj pursuant to the Taj Agreement, as described in paragraphs 8-10 above.

41.     Abeckaser thereby wrongfully has acquired possession of and converted OSF's collateral, which secures Taj's $2,112,500 (Two Million One Hundred and Twelve Thousand Five Hundred Dollars and Zero Cents) debt to OSF.

42.     Abeckaser is also causing grave and irreparable harm to OSF's business by purporting to sell the E-cigarette units obtained from Taj at a price well below the $6.50 minimum price set forth in the Taj Agreement and falsely representing that he is authorized to do so.  See Exhibit A, § 5.6.

43.     A screen shot of blast text message recently sent by Abeckaser to third party business accounts advertising the sale of the E-cigarettes for $5.75, well beneath the $6.50 minimum price set forth in the Taj Agreement, is attached as **Exhibit H.**  As noted, Abeckaser lacks any license or authority to sell OSF products, should not be in the possession of any the E-cigarettes for resale, and his possession violates and is depleting OSF's secured collateral rights.

44.     On information and belief, including specifically the fact that Taj provided Abeckaser with some of the unpaid-for E-cigarette units OSF delivered to Taj, Defendants are working in concert to injure OSF by attempting to sell this product in the marketplace under false pretenses and well beneath the minimum $6.50 cent price set forth in the Taj Agreement, which Abeckaser also signed on his own behalf.

45.     OSF has retained the law firm of Reed Smith LLP in connection with this action, and is obligated to pay the firm a reasonable fee for professional services rendered. OFS seeks to recover all attorneys' fees and costs from Defendants pursuant to the Taj and Abeckaser Agreements, and as otherwise authorized by law.

46.     All conditions precedent to this action have been performed, excused, or otherwise waived.

47.     Paragraph 12.5 of the Abeckaser Agreement and Paragraph 20.5 of OSF Agreement provide that either party thereto could apply "to a court of competent jurisdiction for temporary or injunctive relief in connection with an arbitrable controversy."  OSF seeks such injunctive relief and does not waive arbitration.  The counts brought herein are in support of the requested injunction.

## COUNT I

### (False Designation of Origin, 15 U.S.C. §§ 1125(a) - Defendants)

48.     OSF restates here the allegations in paragraphs 1 through 47 as if fully set forth herein.

49.     OSF has the exclusive right to sell and market the E-cigarette in Florida and the United States.

50.     Because OSF's explicit or implied permission to sell the E-cigarettes has now been revoked, Defendants no longer have any right to use the FIRE brand or to sell the E-cigarettes.

51.     The Defendants' statements that they are authorized retailers or distributors of the E-cigarettes are false and misleading.

52.     The statements deceived, or had the capacity to deceive, distributors and consumers.

53.    The deception had a material effect on the consumers and distributors' purchasing decision.

54.    The misrepresented sales affects interstate commerce.

55.    OSF has been, or likely will be, injured as a result of the false or misleading statements.

## COUNT II

**(Breach of Agreement – Taj Wholesale, LLC)**

56.    OSF restates here the allegations in paragraphs 1 through 47.

57.    OSF and Taj entered into the Taj Agreement, under which OSF engaged Abeckaser as a consultant to identify prospective distributors for OSF products and facilitate introductions, in exchange for a fee. See Exhibit A.

58.    Taj breached the Agreement by failing to pay OSF as agreed for product delivered, by failing to meet minimum order thresholds, and by failing to protect and preserve OSF's secured collateral rights with respect to product received by Taj but not paid for.

59.    Taj's breach is causing OSF to suffer damages.

## COUNT III

**(Breach of Agreement – Gad Abeckaser)**

60.    OSF restates here the allegations in paragraphs 1 through 47.

61.    OSF and Abeckaser entered into the Abeckaser Agreement under which OSF engaged Abeckaser as a marketing consultant to help OSF identify and facilitate introductions to E-cigarette distributors and otherwise expand orders from retail business accounts. *See* Exhibit D.

62.    Abeckaser breached the Agreement by misrepresenting facts to and otherwise defrauding OSF business accounts.

63.    Abeckaser's breach has caused OSF to suffer damages.

## COUNT IV

### (Unjust Enrichment - Defendants)

64.    OSF restates here the allegations in paragraphs 1 through 47.

65.    OSF conferred direct benefits upon Defendants.

66.    Defendants requested, had knowledge of, and accepted and retained these benefits.

67.    Under the circumstances, it would be inequitable for Defendants to retain these benefits without paying OSF the value thereof.

## COUNT V

### (Goods Sold – Taj Wholesale, LLC)

68.    OSF restates here the allegations in paragraphs 1 through 47.

69.    Taj owes OSF $2,112,500 (Two Million One Hundred and Twelve Thousand Five Hundred Dollars and Zero Cents) for goods sold and delivered by OSF to Taj between December 22, 2023 and March 23, 2023.

70.    Invoices reflecting the delivery and receipt of these goods by Taj and related pricing are collectively attached as Exhibit D.

## COUNT VI

### (Account Stated – Taj Wholesale, LLC)

71.    OSF restates here the allegations in paragraphs 1 through 47.

72.    Prior to the filing of this action, OSF and Taj had business transactions between them as set forth in the invoices and statements collectively attached as Exhibit D.

73.    Taj agreed and did not object to the pricing reflected in these invoices and statements.

74.     Taj owes OSF $2,112,500 (Two Million One Hundred and Twelve Thousand Five Hundred Dollars and Zero Cents) for goods sold and delivered by OSF to Taj between December 22, 2023 and March 23, 2023.

75.     Invoices reflecting the delivery and receipt of these goods by Taj and related pricing are collectively attached as Exhibit D.

## COUNT VII

### (Equitable Accounting -- Defendants)

76.     OSF restates here the allegations in paragraphs 1 through 46.

77.     The facts and circumstances regarding the preservation of the 500,000 units of OSF's secured collateral, and Taj's sale and/or transfer of this collateral to third parties, involve extensive or complicated accounts, and as such it is unclear whether a remedy at law is as full, adequate and expeditious as it is in equity.

WHEREFORE, to ensure the preservation of OSF's rights and prevent the further alienation of its secured collateral, Plaintiff OSF Group, LLC requests that the direct, on an expedited basis, that Defendant Taj Wholesale, LLC fully account for each of the 500,000 product units that OSF delivered in connection with the Agreement, which comprises OSF's collateral.

## COUNT VIII

### (Preliminary Injunctive Relief – Taj Wholesale, LLC)

78.     OSF restates here the allegations in paragraphs 1 through 46.

79.     With respect to the foregoing facts and the ongoing damage being caused to its brand in the marketplace, OSF stands to suffer immediate and irreparable harm unless the status quo is maintained.

80.     OSF lacks an adequate remedy at law.

81.     OSF is substantially likely to prevail on the merits of its claims.

82.     The threatened injury to OSF, in connection with the loss of its secured collateral rights and irreparable damage to its brand and customer goodwill in the marketplace, outweighs any possible harm to Taj caused by the injunctive relief sought.

83.     The granting of the temporary and preliminary injunction sought will not disserve the public interest.  On the contrary, such relief will serve the public interest.

WHEREFORE, Plaintiff OSF Group, LLC respectfully requests entry of a temporary and preliminary injunction that temporarily and preliminarily precludes Defendant Taj Wholesale, LLC from: (a) selling, transferring, dispending with, or otherwise alienating any of OSF's secured collateral, including the E-cigarettes that OSF delivered to Taj; or (b) holding itself out as a licensed/authorized dealer or distributor of OSF products in any jurisdiction.

## COUNT IX

### (Preliminary Injunctive Relief – Gad Abeckaser)

84.     OSF restates here the allegations in paragraphs 1 through 47.

85.     With respect to the foregoing facts and the ongoing damage being caused to its brand in the marketplace, OSF stands to suffer immediate and irreparable harm unless the status quo is maintained.

86.     OSF lacks an adequate remedy at law.

87.     OSF is substantially likely to prevail on the merits of its claims against GA.

88.     The threatened injury to OSF, in connection with the loss of its secured collateral rights and irreparable damage to its brand and customer goodwill in the marketplace, outweighs any possible harm to Abeckaser caused by the injunctive relief sought.

89.     The granting of the temporary and preliminary injunction sought will not disserve

the public interest.  On the contrary, such relief will serve the public interest.

WHEREFORE, Plaintiff OSF Group, LLC respectfully requests entry of a temporary and preliminary injunction that temporarily and preliminarily precludes Defendant Gad Abeckaser, LLC from: (a) selling, transferring, dispending with, or otherwise alienating any of OSF's secured collateral, including the E-cigarettes that OSF delivered to Taj or to any unauthorized distributor; or (b) holding itself out as a licensed/authorized dealer or distributor of OSF products in any jurisdiction.

## COUNT X

### (Conversion of Collateral - Defendants)

90.     OSF restates here the allegations in paragraphs 1 through 47.

91.     Defendants are wrongfully asserting dominion and control over OSF's secured collateral, which includes the units of E-cigarettes delivered by OSF but not paid for, and all proceeds derived by Defendants therefrom. *See* Exhibit A, § 4.5; Exhibit C.

92.     Defendants' actions are inconsistent with and otherwise violate OSF's secured interest in the subject property and are depriving OSF of its rights as a secured creditor.

93.     OSF has demanded the return of its secured collateral, to no avail.

## COUNT XI

### (Replevin; Fla. St. § 78.055 - Defendants)

94.     OSF restates here the allegations in paragraphs 1 through 47.

95.     To the best of OSF's information and belief, Defendants are in possession of OSF's collateral property, i.e., the E-cigarettes that OSF shipped to Taj.

96.     OSF has an ownership interest in, and is entitled to possession of, the E-cigarettes and all proceeds derived by Defendants therefrom because, among other things: (a) the E-cigarettes

were delivered to Taj but not paid for; and (b) OSF has a perfected priority lien on the E-cigarettes and all related proceeds to secure this debt. See Exhibits A and C.

97.    The E-cigarettes have been wrongfully detained by Defendants.

98.    The E-cigarettes have not been taken for any tax, fine or assessment pursuant to law.

99.    The E-cigarettes have not been taken under any execution or attachment against the property of OFS.

## COUNT XII

**(Deceptive and Unfair Trade Practices; Fla. St. § 501.201, et seq. -- Defendants)**

100.    OSF restates here the allegations in paragraphs 1 through 47.

101.    OSF is a person aggrieved by a violation of Fla. St. § 501.201, et. seq.

102.    Defendants' actions constitute unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce.

103.    Defendants action have caused and continue causing OSF to suffer actual damages, including without limitation money damages; irreparable damage to OSF's business reputation and customer goodwill; irreparable damage to its pricing structure and profit models; and the alienation and depletion of OFS's secured collateral.

## COUNT XIII

**(Tortious Interference With Contract &
OSF's Advantageous Business Relationships – Gad Abeckaser)**

104.    OSF restates here the allegations in paragraphs 1 through 47.

105.    OSF has a business relationship with Taj, as evidenced by the Taj Agreement.

106.    OSF has business relationships with other third party businesses, including other distributors for FIRE brand E-cigarettes.

107.    Abeckaser has knowledge of these contractual and other advantageous business relationships.

108.    Abeckaser has intentionally and unjustifiably interfered with OSF's contractual and other advantageous business relationships.

109.    Abeckaser's unlawful interference with OSF's contracts and advantageous business relationships has caused OSF to suffer damages.

**REED SMITH LLP**
*Counsel for Plaintiff OSF Group, LLC*

200 S. Biscayne Blvd
Suite 2600
Miami, FL 33131
Phone:  (786) 747-0200

/s/ Edward M. Mullins
Edward M. Mullins
Florida Bar No. 863920
Email: emullins@reedsmith.com
Alexis A. Leventhal
Florida Bar No. 108064
Email:  aleventhal@reedsmith.com